[Civ. No. 35928. First Dist., Div. Four. June 5, 1975.]

OSCAR LAINES, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
MACK TRUCK, INC., et al., Respondents.

**COUNSEL**

Van Bourg, Allen, Weinberg, Williams & Roger and Frank J. Reilly for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, Albert Sennett and Hogen J. Kallemeyn for Respondents.

**OPINION**

**EMERSON, J.**\*—Petitioner Oscar Laines sustained industrial injuries to his left knee on June 14, 1973, and June 30, 1973, in the course of his employment with respondent Mack Truck, Inc. He was directed by his employer to seek medical treatment for these injuries at the Levine

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Medical Clinic in Hayward. On July 23, 1973, while enroute from his attorney's office to the Levine Medical Clinic to keep an appointment for a medical examination in connection with the June 14 knee injury,[1] petitioner was injured when a motorcycle on which he was riding was hit by a truck. (We will hereafter refer to the July 23 injury as the accident injury, in order to distinguish it from both the first and second industrial injuries.) It is undisputed that the industrial knee injury, in itself, was not a factor contributing to the accident.

Petitioner's cases relating to all three injuries were consolidated for hearing before a referee. In his findings and award, issued August 9, 1974, the referee stated that the injury sustained in the accident did not arise out of and in the course of petitioner's employment, and issued a "take nothing" order in that case. He found, however, that those injuries were a "compensable consequence" of the June 14 industrial injury, and that petitioner was therefore entitled to temporary disability from June 14 forward. The referee also found that the June 30 injury arose out of and in the course of employment, but that it caused no temporary disability and required no medical treatment. The latter finding is not questioned in the instant proceeding.

Respondents filed a petition for reconsideration of the referee's decision with respect to the June 14-July 23 injuries. On October 3, 1974, the Workers' Compensation Appeals Board (hereafter "Board") granted reconsideration and issued its opinion and order granting reconsideration and decision after reconsideration reversing the referee's findings and award and holding, inter alia, that the injuries sustained by petitioner in the accident were not proximately caused by the industrial injury and therefore were not compensable. From this decision petitioner sought a writ of review. We granted the writ for the purposes of clarifying the point of law involved.

The issue before us may be stated thus: is an employee entitled to receive workers' compensation benefits for injuries sustained while enroute to receive medical treatment for an industrial injury where (a)

---

[1]Respondents are incorrect in their assertion that there is a factual dispute as to whether or not petitioner was going to the clinic to keep an appointment or whether he was merely going there to deliver some forms which he could have mailed in. The referee weighed the testimony of the witnesses with respect to this question and found that petitioner was going to the clinic to keep an appointment made for him a week earlier. This finding was upheld by the Board and we determine from a review of the entire record that it is supported by substantial evidence. (See *Le Vesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

the industrial injury, in itself, was not a factor contributing to the second injury, and (b) where the journey did not commence at the worker's place of employment?

Although this issue has been considered by the Workers' Compensation Appeals Board in several cases, it has not been discussed and resolved at the appellate court level.

Section 3600 of the Labor Code provides that an employee's injury is compensable when the following conditions concur: "(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment. [¶] (c) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (d) Where the injury is not caused by the intoxication of the injured employee. [¶] (e) Where the injury is not intentionally self-inflicted. [¶] (f) Where the employee has not willfully and deliberately caused his own death. [¶] (g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor." The existence of conditions (a), (d), (e), (f), and (g) are not in dispute in this case. The issue revolves around the existence of conditions (b) and (c): Was petitioner performing a service growing out of and incidental to his employment and acting in the course of his employment? Was petitioner's injury proximately caused by his employment? Petitioner contends that the accident injury did arise out of and in the course of employment, since he was required to visit the examining physician under Labor Code sections 4050,[2] 4051,[3] 4053,[4] and 4056,[5] and

[2]"Whenever the right to compensation under this division exists in favor of an employee, he shall, upon the written request of his employer, submit at reasonable intervals to examination by a practicing physician, provided and paid for by the employer, and shall likewise submit to examination at reasonable intervals by any physician selected by the commission or any member or referee thereof."

[3]"The request or order for the medical examination shall fix a time and place therefor, due consideration being given to the convenience of the employee and his physical condition and ability to attend at the time and place fixed."

[4]"So long as the employee, after written request of the employer, fails or refuses to submit to such examination or in any way obstructs it, his right to begin or maintain any proceeding for the collection of compensation shall be suspended."

[5]"No compensation is payable in case of the death or disability of an employee when his death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the commission, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

since his employer was required to provide him with such treatment and to reimburse him on a mileage basis for his transportation expenses in making such a visit under Labor Code section 4600.[6] He also asserts that the accident injury was proximately caused by the industrial injury and thus was a "compensable consequence" of the industrial injury, as discussed in *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin)* (1959) 176 Cal.App.2d 10 [1 Cal.Rptr. 73].

The threshold question is whether petitioner's accident injury arose out of and in the course of his employment. Since, as stated above, there are no California appellate court cases on this point, petitioner refers us to various out-of-state authorities, including a 1963 Kansas case, *Taylor* v. *Centex Construction Co.* (1963) 191 Kan. 130 [379 P.2d 217]. In Kansas, as in California, the employer is required to furnish the employee with medical treatment, and the employee is obligated to submit to examination and treatment as a condition of receiving compensation. (See *Taylor* v. *Centex Construction Co., supra,* at p. 221.) Noting these statutory requirements, the court states that: "The liability of an employer to an employee arises out of a contract between them and the terms of the Act are embodied in the contract. . . . It would be folly to say that the claimant's trip going to and from the doctor's office did not 'arise out of' the nature, conditions, obligations, or incidents of his employment." (*Taylor* v. *Centex Construction Co., supra,* at p. 221.)

The case of *Immer and Company* v. *Brosnahan* (1967) 207 Va. 720 [152 S.E.2d 254], relying on *Taylor,* reaches a similar decision based on comparable statutory provisions. The Virginia court said: "[1] The

---

[6]"Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment. [¶] In accordance with the rules of practice and procedure of the commission, the employee, or the dependents of a deceased employee, shall be reimbursed for expenses reasonably, actually, and necessarily incurred for X-rays, laboratory fees, medical reports, and medical testimony to prove a contested claim. The reasonableness of and necessity for incurring such expenses to prove a contested claim shall be determined with respect to the time when such expenses were actually incurred. Expenses of medical testimony shall be presumed reasonable if in conformity with the fee schedule charges provided for impartial medical experts appointed by the commission. [¶] Where at the request of the employer, the employer's insurance carrier, the commission, or any commissioner or referee, the employee submits to examination by a physician, he shall be entitled to receive in addition to all other benefits herein provided all reasonable expenses of transportation, meals and lodging incident to reporting for such examination, together with one day of temporary disability indemnity for each day of wages lost in submitting to such an examination."

medical attention which the employer is required to furnish and the employee is entitled and obligated to receive is incidental to and a part of the compensation to which the employee is entitled under the Act. Merrimac Coal Corp. v. Showalter, 158 Va. 227, 231, 232, 163 S.E. 73. The requirement has as its obvious dual purpose the placing of the cost of such medical attention upon the employer and the restoring of the employee's health so that he may return to useful employment as soon as possible. The furnishing and receiving of such medical attention inures, therefore, to the benefit of the employee and, albeit indirectly, to the employer as well. [¶] [2,3] The requirement of the Act that the employer furnish and the employee accept medical attention is read into the employment contract between them. Glassco v. Glassco, 195 Va. 239, 241, 77 S.E.2d 843. When the employer directs or authorizes the employee to seek medical attention for a work-connected injury and the employee follows such direction or authorization, they are but fulfilling the reciprocal obligations of the Act and their contract. To say that an additional injury, suffered by an employee while fulfilling such an obligation, is not also work-connected has little support in modern legal authority and even less in logic." (*Immer and Company* v. *Brosnahan, supra,* at p. 257.)

The rationale of these decisions is persuasive. ■ Where the visit to the doctor is based on the statutory obligation of the employer to furnish and the employee to submit to medical examination and nondangerous treatment (see Lab. Code, §§ 4600, 4050, 4056), an injury sustained in the course of such a visit should be held to be an injury arising out of and in the course of employment within the meaning of section 3600 of the Labor Code. If the employee elects to stay at home rather than to venture out to such a medical examination treatment, he risks losing his right to seek compensation for his industrial injury under Labor Code sections 4053 and 4056.

*Larson,* in his treatise on workmen's compensation, discussing *Taylor,* states that: "In the simple case . . . of a trip to the doctor's office necessitated by a compensable injury, the arguments put forward by the Kansas court in the *Taylor* case are difficult to answer. The court noted that the employer is under a statutory duty to furnish medical care, and that the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected." (1 Larson, The Law of Workmen's Compensation (1972) § 13.13, ch. 3.)

When, in addition to these persuasive considerations, we recognize the California legislative mandate that the Labor Code ". . . shall be liberally construed by the courts with the purpose of extending . . . [its] benefits for the protection of persons injured in the course of their employment" (Lab. Code, § 3202), we are impelled to hold, and we do so hold, that the accident injury sustained by petitioner arose out of and in the course of his employment.

The Labor Code also requires that an injury, to be compensable, must be proximately caused by the employment. (Lab. Code, § 3600, subd. (c).) Petitioner's argument that the accident injury was proximately caused by the industrial injury is based primarily on the case of *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin), supra,* 176 Cal.App.2d 10. In *Wallin,* a carpenter sustained an industrial injury to his eye; more than a year later, while using a power saw at home, he amputated a finger. (*State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin), supra,* at p. 12.) Although the compensation carrier claimed that the causal chain which linked the industrial injury to the second injury was broken because of the alleged negligence of Wallin in operating the power saw, the (then) Industrial Accident Commission held that the first injury "proximately resulted" in the second. In upholding the commission's award, Justice Tobriner stated: ". . . the first injury need not be the exclusive cause of the second but only a contributing factor to it; . . . So long as the original injury operates even in part as a contributing factor it establishes liability." (*State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin), supra,* at p. 17.) The *Wallin* court specifically rejected the narrow definition of causation applicable in tort law, stating: "The concept of proximate causation has given courts and commentators consummate difficulty and has in truth defied precise definition. Its variegated threads can be woven into either loose or tight patterns, and we cannot believe the Legislature using the term in the context of liability without fault meant to designate a strict design. Every precept of construction in the Act argues for the liberal interpretation." (*State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin), supra,* at p. 20.)

*Wallin* is not controlling here, since Wallin's injury to his eye contributed to the mishandling of the power saw which resulted in the amputation of his finger. In petitioner's case the knee injury did *not* contribute to the accident; the accident was work-related only in the sense that it occurred in the course of a trip to the doctor's office.

On the question of causation in a case of this nature, *Larson* states that: "When an employee suffers additional injuries because of an

accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable. If the journey takes place immediately after the first injury occurs, the chain of causation is most readily visible, as when an employee was being rushed to a hospital following a compensable injury and sustained further injury when the ambulance was involved in a collision. *But, quite apart from the element of immediacy, a fall or automobile accident during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey, without any necessity for showing that the first injury in some way contributed to the fall or accident.* Of course, if the prior injury in any way contributes to the second accident, the case is that much stronger, as when pain or drugs or a weakened member may have played a part." [Italics added.] (1 Larson, The Law of Workmen's Compensation, *supra,* § 13.13, ch. 3.) The Board's opinion rejects *Larson's* approach and would provide coverage only for the trip from the jobsite, where the injury occurred, to the doctor's office for the first treatment. In our opinion, the establishment of such a rule as the limit of proximate cause would be too narrow.

The most serious problem with providing coverage in the case of the trip to the doctor's office in a case such as petitioner's, is that the employer lacks the opportunity to exercise any control over the trip. The time the trip is made, the route followed, and the means of transportation employed are completely within the discretion of the employee, and the employer is thus unable to insure that the trip is reasonably safe and free of unnecessary hazards.

Given the arguments set forth above, a choice must be made between requiring the employer to bear the risk of the employee's injury or requiring the employee to bear the risk of any mishap that may befall him while seeking statutorily required medical attention. We conclude that the risk should be borne by the employer. We determine, therefore, that the industrial injury of petitioner was a proximate cause of his accident injury.

Respondent raises the point that a holding such as that which we make in this case would, under the doctrine of *respondeat superior,* impose upon the employer liability for an injury to a third party caused by the negligent conduct of the employee during his trip. The point is not before us in the instant case.

We note, nonetheless, that a distinction has been drawn between the test of ". . . arising out of and in the course of the employment . . ." (Lab. Code, § 3600) and the test of "scope of employment" under the *respondeat superior* doctrine. (See *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 [88 Cal.Rptr. 188, 471 P.2d 988], and cases there cited.) In reaching our decision we have deemed ourselves governed by the mandate of liberal construction contained in Labor Code section 3202. We hold only that petitioner, in traveling to the examining physician's office, was engaged in an activity which arose out of and in the course of his employment as of the time when the industrial injury was received.

The decision of the Board is annulled. The matter is remanded to the Board for further proceedings consistent with the views expressed in this opinion.

Caldecott, P. J., and Rattigan, J., concurred.

The petition of respondents Mack Truck, Inc., and Travelers Insurance Company for a hearing by the Supreme Court was denied July 30, 1975.