**Marion A. MOREAU**

v.

**ZAYRE CORPORATION and American Mutual Insurance Company.**

Supreme Judicial Court of Maine.

Dec. 17, 1979.

---

1290

Orestis & Garcia, P. A., Frederick H. Greene, III (orally), Lewiston, for plaintiff.

Robinson & Kriger, Sarah Allison Thornton (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

Marion Moreau appeals from a pro forma decree entered on May 2, 1979 by the Superior Court, Androscoggin County, which affirmed a decision of the Workers' Compensation Commission. The appellees, Zayre Corporation (Zayre) and American Mutual Insurance Company (American Mutual), have filed a motion in this Court to dismiss the appeal. This motion was consolidated for argument with the merits of the appeal. We deny the motion to dismiss and sustain the appeal.

On May 2, 1978, the appellant injured her hand while employed by Zayre as a cashier in its Lewiston store. She testified that she promptly notified her employer and filed an accident report but she did not petition for workers' compensation or enter into a compensation agreement with Zayre or its insurance carrier, American Mutual. Although the appellant continued to work, she did find it necessary to seek medical treatment for her injured hand. While driving home on May 22, 1978 following her third visit to the physician, the appellant was involved in an automobile accident, sustaining injuries to her neck and back which precluded her from working until July 24, 1978.

The appellant filed a petition with the Workers' Compensation Commission on October 4, 1978, seeking compensation not for her May 2 hand injury but for the May 22 injuries to her neck and back. The appellant alleged that these injuries were compensable because they were incurred in the course of securing medical treatment for a prior compensable injury. Following hearing, the Commission dismissed the petition, ruling that because the May 2 injury had "never been found to be compensable" the injuries sustained in the May 22 collision did not arise out of or in the course of the appellant's employment.

## I. MOTION TO DISMISS

■ Of the papers accompanying the appellant's motion for a pro forma decree, only the decision of the Commission was attested by the Commission clerk; all the other papers were ostensibly the file copies of the appellant's counsel. In their motion to dismiss, the appellees contend that 39 M.R.S.A. § 103 required the appellant to file certified copies of all the papers that accompanied the motion for a pro forma decree and, therefore, that this appeal is not properly before the Court. Section 103 provides in pertinent part:

*Any party in interest may present copies, certified by the clerk of the commission, of any order or decision of the commission or of any commissioner, or of any memorandum of agreement approved by the commission, together with all papers in connection therewith, to the clerk of courts for the county in which the injury occurred . . . .* 39 M.R.S.A. § 103. (Emphasis added).

We have held that Section 103 was intended to effectuate the dual purpose of providing for the enforcement of and for the appeal

from Commission decrees. *Matthews v. R. T. Allen & Sons, Inc.,* Me., 266 A.2d 240, 242 (1970).

The plain meaning of Section 103 requires certification only of the order, decision or approved memorandum and not of all papers connected with the case. It is instructive that Section 103 goes on to provide that the Law Court has no jurisdiction to hear an appeal from a pro forma decree based on an order or decision of the Commission "unless said *order or decision has been certified* and presented to the [Superior Court] within 20 days . . . ." 39 M.R.S.A. § 103. (Emphasis added). Had the legislature intended that the certification requirement extend to all connected papers, this latter provision would assuredly include the phrase "and all papers in connection therewith." The appellees maintain that a party who seeks enforcement or review of an order, decision or approved memorandum must request the clerk of the Commission to prepare a packet of all the documents entered in the case under a letter of certification and then file this certified packet in the Superior Court. This procedure would appear to be preferable to that followed by the appellant; however, it is not required under the terms of Section 103. Although among the papers accompanying the motion for a pro forma decree was a document not properly includable in the record under Rule 12 of the Commission,[1] that is not a reason to read into the statute a requirement which is not there. The remedy of the appellees was to seek correction of the record on appeal under M.R.Civ.P. 74(e). In any event, the document in question, which appears to be an accident report of the May 2 injury, is duplicative of the appellant's uncontradicted testimony in all material respects.

■ In submitting a copy of the decision attested by the clerk of the Commission, the appellant complied with the certification requirement of Section 103. Attestation is tantamount to certification within the meaning of the statute. *Winter v. Casco Bank and Trust Co.,* Me., 396 A.2d 1020, 1022 (1979); *Doherty v. McDowell,* 276 F. 728, 730–31 (D.Me. 1921). *See also* Webster's Third New International Dictionary 367 (1971). We therefore deny the appellees' motion to dismiss and proceed to the merits of this appeal.

## II. COMPENSABILITY OF THE MAY 22 INJURIES

■ The question for review is whether as a matter of law an injury suffered by an employee while en route to or from a place where he has received medical treatment for a prior compensable injury may itself be compensable as an injury "arising out of and in the course of his employment" within the meaning of the Maine Workers' Compensation Act, 39 M.R.S.A. § 51. Although the factual findings of the Commission will not be disturbed if supported by credible evidence, the application of erroneous principles of law to the facts found is reversible on appeal. *Gilbert v. Maheux,* Me., 391 A.2d 1203, 1205–06 (1978).

Section 51 creates dual statutory requirements both of which must be satisfied for an injury to be found compensable. *Wolfe v. Shorey,* Me., 290 A.2d 892, 893 (1972). This Court has defined these requirements for workers' compensation:

> The 'arising out of' factor means that 'the injury, in some proximate way, had its origin, its source, its cause in the employment,' while the concept of an injury 'in the course of' the employment 'refers to time, place and circumstances.' *Blackman v. Harris Baking Co.,* Me., 407 A.2d 21, 23 (1979), *quoting Gilbert v. Maheux, supra* 391 A.2d at 1205.

The critical inquiry here is whether the injury occurred "in the course of" the em-

---

1. Rule 12(a) provides:

   When an appeal is taken from a decree of the Commission, no instrument in the Commission file shall be included in the papers going to the Superior Court other than Petition, Answer, approved Agreement, Commission decree on the matter in issue, and record of testimony taken at hearing together with all exhibits admitted or excluded with exception taken. Industrial Accident Commission, Maine Workmen's Compensation Act and Occupational Disease Law 45 (1977).

ployment, that is, whether the injury occurred while the employee was fulfilling the duties of employment or engaged in an activity incidental to the employment at a place where she reasonably might be. *Babine v. Lane Construction Corp.*, 153 Me. 339, 342, 138 A.2d 625, 627 (1958); *Fournier's Case*, 120 Me. 236, 240, 113 A. 270, 272 (1921).

■ As a general rule, injuries incurred by an employee while on a public way going to or from work do not occur in the course of employment because typically there is an insufficient nexus between his presence on the highway and the employment relation. *Waycott v. Beneficial Corp.*, Me., 400 A.2d 392, 394 (1979). Nevertheless, this Court has recognized several exceptions to the "public street" or "going and coming" rule where "a more significant relationship" exists between injury and employment, given the facts of the case and the terms of the employment contract. *Id.; see, e.g., Abshire v. City of Rockland*, Me., 388 A.2d 512, 514–15 (1978) ("special errand" exception); *Brown v. Palmer Construction Co.*, Me., 295 A.2d 263, 266 (1972) ("traveling employee" exception); *Sargent v. Raymond F. Sargent, Inc.*, Me., 295 A.2d 35, 42 (1972) ("dual purpose" rule).

■ Now we must determine whether to recognize another exception which would allow an employee compensation for an injury received while en route to or from securing medical treatment for a prior industrial injury. The majority of those jurisdictions that have considered this issue hold that the second injury arises in the course of employment, even though the prior compensable injury did not itself contrib-

ute to the second injury. *E.g., Laines v. Workmen's Compensation Appeals Bd.*, 48 Cal.App.3d 872, 877, 122 Cal.Rptr. 139, 142 (1975); *Taylor v. Centex Construction Co.*, 191 Kan. 130, 135, 379 P.2d 217, 221 (1963); *Charles N. Clark Associates Ltd. v. Robinson*, 357 So.2d 924, 929 (Miss. 1978); *Immer and Company v. Brosnahan*, 207 Va. 720, 722, 152 S.E.2d 254, 256 (1967). *See generally* 1 A. Larson, The Law of Workmen's Compensation § 13.13 (1978). *Contra, Kiger v. Idaho Corp.*, 85 Idaho 424, 430, 380 P.2d 208, 211 (1963) (highway collision constituted independent intervening cause). These courts reason that the provisions commonly found in the workers' compensation statutes requiring that employers provide, and employees accept, medical services for compensable injuries are implied into the contract of employment and that an employee en route to or from a place of medical treatment is therefore fulfilling a duty of his employment contract. Thus, an injury sustained in the discharge of this duty occurs in the course of employment. *E.g., Taylor v. Centex Construction Co., supra*, 191 Kan. at 135, 379 P.2d at 221; *Immer and Company v. Brosnahan, supra*, 207 Va. at 724, 152 S.E.2d at 257.

Guided by the legislative mandate that the Workers' Compensation Act be liberally construed in favor of the employee, *Gilbert v. Maheux, supra*, 391 A.2d at 1205; 39 M.R.S.A. § 92, we find persuasive the rationale of those courts that permit compensation for an injury sustained en route to or from securing medical treatment for a prior compensable injury.[2] Section 51 of the Act obliges an employer to furnish medical services to an employee who has suffered a compensable injury. Section 52 allows the

---

2. Other courts have reached the same result either without reference to the statutory rationale, *Pedersen v. Maple Island Inc.*, 256 Minn. 21, 22–23, 97 N.W.2d 285, 286–87 (1959); *John v. Fairmont Creamery Co.*, 268 A.D. 840, 841, 50 N.Y.S.2d 253, 254 (1944) (per curiam), or where the accident occurred en route to a doctor or hospital immediately following the industrial injury and the employer secured or furnished the transportation, *Bettasso v. Snow-Hill Coal Corp.*, 135 Ind.App. 396, 401, 189 N.E.2d 833, 836 (1963); *Governair Corp. v. District Court*, 293 P.2d 918, 921 (Okl. 1956).

California has extended *Laines* beyond its statutory rationale, allowing compensation to an employee who was injured while returning home after leaving with his employer, pursuant to the employer's instruction, a medical release form allowing the employee to return to work following a prior compensable injury. The California court emphasized that the form was delivered according to the employer's express instruction. *Southern Cal. Rapid Transit Dist., Inc., v. Workers' Compensation Appeals Bd.*, 23 Cal.3d 158, 165–66, 151 Cal.Rptr. 666, 670, 588 P.2d 806, 810 (1979).

employee to choose his own physician to perform these services at the employer's expense. Section 65 requires the employee to accept this medical treatment at the risk of waiving his right to compensation under the Act. These statutory provisions, imposing correlative duties on the employer and employee with regard to compensable injuries, constituted part of the appellant's employment contract with Zayre. If the May 2 injury were compensable, therefore, in traveling from the physician's office after receiving medical treatment the employee was at a place where she had a right to be while engaged in an activity incident to her employment. It is immaterial that the appellant's journey did not begin or end at the workplace. *Cf. Laines v. Workmen's Compensation Appeals Bd., supra,* 48 Cal.App.3d at 879, 122 Cal.Rptr. at 143; *Pedersen v. Maple Island Inc.,* 256 Minn. 21, 22, 97 N.W.2d 285, 286 (1959).

■ At the time of the second injury, there was a subsisting employment relationship between the appellant and Zayre. *See Bankers Inv. Co. v. Boyd,* 560 P.2d 958, 961 (Okl. 1977). Although the appellant testified that she gave prompt notice of her hand injury to her employer, there is no evidence that Zayre directed or authorized her to seek medical attention for the injured hand.[3] It is the fact of compensability and not that of permission which triggers the application of the reciprocal statutory obligation to secure and to pay for medical attention. *Contra, Snowbarger v. M.F.A. Cent. Co-op.,* 328 S.W.2d 50, 53 (Mo. App. 1959), *aff'd,* 349 S.W.2d 224 (Mo. 1961). We reach this conclusion for several reasons: First, the employee's right to receive medical services at the expense of the employer vests upon the happening of the industrial accident. *Norton v. Penobscot Frozen Food Lockers Inc.,* Me., 295 A.2d 32, 34 (1972); *White's Case,* 126 Me. 105, 106, 136 A. 455, 456 (1927). Second, "reasonable transportation costs necessarily incident to receiving medical treatment are compensable" without regard to whether the employ-

er has authorized the trip. *See Chaples v. Gilco Inc.,* Me., 280 A.2d 546, 547 (1971). Third, securing medical attention for an industrial injury is of mutual benefit to the employer and the employee. Fourth, in requiring the employer to pay for medical services necessitated by an industrial injury, Section 52 requires the employee receiving such services to give prompt notice to the employer. The section thus recognizes instances where the employee without permission or authorization procures medical treatment for a compensable injury.

■ Since at the time of injury the appellant was "in the course of" her employment, we must next consider whether the injury arose out of her employment. This is essentially a question of causation. *See Oliver v. Wyandotte Industries Corp.,* Me., 360 A.2d 144, 147 (1976); *Wolfe v. Shorey, supra,* 290 A.2d at 893. The issue may be analyzed in terms of foreseeability. *Petersen's Case,* 138 Me. 289, 291, 25 A.2d 240, 241 (1942). The risk of injury from the ordinary hazards of operating an automobile is a foreseeable risk to an employee who is on the highway in the course of employment. When such an employee sustains an injury in an automobile collision, the injury "arises out of" the employment.

■ The language of the Commission's decision manifests a misunderstanding of the legal principles applicable to this case and of the factual findings it was required to make. The Commission predicated its conclusion on the fact that the May 2 injury had "never been found to be compensable." The crucial factual determination, however, was not whether there had been a prior formal finding that the hand injury was compensable but whether, as a subsidiary finding necessary to the resolution of the appellant's claim, the May 2 injury was compensable. As to this inquiry, it is immaterial that the appellant had not petitioned for benefits for the hand injury or entered into an approved agreement for compensation. *See Charles N. Clark Associates Ltd. v. Robinson, supra,* 357 So.2d at 929.

---

3. *See, e.g., Laines v. Workmen's Compensation Appeals Bd., supra,* 48 Cal.App.3d at 877, 122

Cal.Rptr. at 142; *Immer and Company v. Brosnahan, supra,* 207 Va. at 724, 152 S.E.2d at 257.

Because the allegations of the petition were sufficient to put the appellees on notice as to the applicable legal theory,[4] we vacate the pro forma decree and remand the case for further proceedings consistent with this opinion. *See Richardson v. Robbins Lumber, Inc.*, Me., 379 A.2d 380, 383–84 (1977). Upon the record as amplified by additional evidence, the Commission should determine, *inter alia*: 1) whether the May 2 injury is a qualifying compensable injury, 2) whether the medical services procured by appellant for the hand injury were reasonable and proper within the meaning of Section 52, and 3) whether by applying the principles enunciated herein the May 22 injuries arose out of and in the course of the appellant's employment.

The entry is:

Motion to dismiss appeal denied.

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Superior Court which shall remand to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

It is further ordered that the appellees pay to the appellant an allowance for counsel fees in the amount of $550, together with her reasonable out-of-pocket expenses, for this appeal.

POMEROY and ARCHIBALD, JJ., did not sit.

---

4. The appellant might have filed two separate petitions, one seeking a determination of compensability of the first injury and the other seeking a determination of compensability of the second injury, and then have had the two petitions consolidated for hearing. That procedure is unnecessary where, as here, the factual allegations of the petition for compensation for the second injury clearly give notice that the petition is predicated upon a preliminary determination of compensability of the first injury.